AMERICAN WOOD WORKING MACHINERY CO. et al. v. NORMENT et al.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1907. On Rehearing, February 8, 1908.)

No. 717.

1. BANKRUPTCY—LIENS—MORTGAGE BY CORPORATION.

A deed of trust executed by a corporation within four months prior to its bankruptcy to secure notes which were issued direct to creditors of its principal stockholder and managing officer to secure his personal indebtedness is in their hands fraudulent and void as against its creditors, under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449].

2. SAME—PROVABLE CLAIMS—ULTRA VIRES NOTES OF CORPORATION.

Notes authorized to be issued by the stockholders of a corporation, and secured by a trust deed on its property, which were issued by its managing officer direct to his personal creditors as collateral security for a prior indebtedness of his own, are ultra vires and void as against the creditors of the corporation in bankruptcy.

3. SAME—LIENS—CONDITIONAL SALE.

A receiver purchased machinery under a contract of conditional sale by which the seller retained title until full payment should be made therefor, but on receipt of the machinery the receiver turned it over to another corporation of which he was the principal stockholder, vice president, and general manager. Such corporation after making partial payments through the receiver became bankrupt. The seller, although having knowledge of the transfer of the machinery, did not recognize the transferee as a purchaser, nor did it record its contract until a short time before the bankruptcy, when it instituted an action in replevin for the machinery, but the same was not removed from the mill in which it had been placed, and was sold by the bankrupt's trustee as a part of its plant. *Held,* that the bankrupt was not a bona fide purchaser of the property within the protection of the North Carolina statute, which provides that contracts of conditional sale shall be valid against creditors or innocent purchasers without notice until they shall be recorded, nor could it acquire any rights by attaching the machinery to its realty, but that the seller had a valid lien thereon for the unpaid portion of the purchase price.

Pritchard, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Wilmington.

For opinion below, see 148 Fed. 244.

Charles A. Douglas and J. G. McCormick (E. B. Sherrill, on the brief), for appellants.

M. C. Woods and Iredell Meares (R. E. Lee and Meares & Ruark, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and MORRIS and DAYTON, District Judges.

DAYTON, District Judge. Upon petition filed April 15, 1905, by the United Lumber Company, the S. U. Price Machinery Company, and Omohundro Brothers, unsecured creditors, the Builder's Lumber Company, a North Carolina corporation, was on May 3, 1905, by the court below, adjudged a bankrupt. In the course of the proceeding three matters of controversy arose which constitute the foundation for

this appeal. These matters were: First. Whether debts aggregating in principal $16,250, evidenced by six notes for $2,500, $5,000, $2,000, $6,000, $375, and $375, all dated January 7, 1905, payable 90 days after date, the first four executed by W. J. Edwards to W. H. Saunders and R. H. Lynn, and the last two by him to said Saunders, Lynn, and R. N. Harper, to secure which Edwards deposited with these parties as collateral, among others, 17 $1,000 notes, executed January 5, 1905, by the Builder's Lumber Company to said Saunders and Lynn, secured by deed of trust of that date to them as trustees, constituted valid and subsisting debts against said bankrupt's estate, having preference from the date of said deed of trust. Second. Whether the claim of the American Wood Working Machinery Company for a balance of $2,575.63 for machinery sold by it to W. J. Edwards, receiver of the Southern Saw Mills & Lumber Company, under contract of conditional sale, which machinery was incorporated in the plant of the bankrupt, was entitled to preference and to be paid in full before other creditors. Third. Whether the United Lumber Company, one of the petitioning creditors, had a valid debt against the bankrupt for $5,000 evidenced by certain notes, or whether said debt had been liquidated and paid by the issue of certain capital stock of the bankrupt to it.

Touching the first question, the material facts may be stated as follows: W. J. Edwards, on the 23d day of November, 1903, was receiver for both the Carolina Northern Railroad Company and the Southern Saw Mills & Lumber Company. He subsequently organized the Builder's Lumber Company, and obtained its charter of date April 5, 1904, at the time substantially owning its stock and becoming its vice president and general manager. On said 23d day of November, 1903, he undertook as receiver of the Carolina Northern Railroad Company, without authority, to issue certain receiver's certificates against this railroad company, among others, three to Harper, Saunders, and Lynn, one for $6,000 on account "of purchase of box cars for said road," a second for $2,000 on account "of purchase of rails for terminals," and the third for $7,500 on account "of purchase of flat cars for said road." Harper was president, Saunders vice president, and Lynn cashier, of the American National Bank of Washington, D. C. Neither box cars, rails, nor flat cars were purchased by this receiver of them. The fact was they agreed to and did furnish him $15,500 in cash for these certificates by indorsing personally said certificates, the first to H. Clay Harding, the second to the Loudoun National Bank, and the third to the National Bank of Manassas. For thus securing for him this $15,500 on these certificates Edwards agreed to give them $750. The Builder's Lumber Company at this time had no corporate existence. Some time after this transaction it was discovered that Edwards had not only issued these receiver certificates without authority, but had also misappropriated the money, and the court called him to account, requiring him personally to take them up and surrender them to it for cancellation. In this situation of things Edwards appealed to Harper, Saunders, and Lynn to take up these three certificates which he had issued to them and they had indorsed to others, and proposed to secure the amount necessary

to do this by mortgages executed by the Philadelphia Construction Company, a corporation which he controlled, and by the Builder's Lumber Company. Saunders personally inspected the latter's property in North Carolina, and they agreed thereafter to Edwards' proposition. In the consummation of the matter there can be little doubt from the testimony that the utmost care and caution were pursued by these able business men. For instance, Edwards, dominating and controlling the Builder's Lumber Company, secured from stockholders proxies authorizing a meeting to approve the deed of trust loan for the purpose of paying debts of the company; and the resolution of the stockholders' meeting, approved by the directors, so set forth that the loan was necessary to provide payment of the debts of the company. These proxies and resolutions, when submitted to Saunders, were held not sufficient, and new proxies had to be secured and new resolutions passed authorizing the loan to be negotiated without limitation. Finally the deed of trust to secure 20 $1,000 notes was authorized and executed on January 5, 1905, by the bankrupt by Edwards, its vice president and general manager. These $1,000 notes and the deed of trust were all executed to Saunders and Lynn. Thereupon the six notes heretofore set forth for $2,500, $6,000, $2,000, $5,000, $375, and $375, were personally executed by Edwards, and 17 of these $1,000 notes with other collateral were put up to secure them, and thereupon Harper, Saunders, and Lynn proceeded to take up and surrender to Edwards the three receiver certificates. This deed of trust having been executed within four months of the bankruptcy adjudication can only be maintained on the ground that the debt secured thereby was made in good faith and without fraud to secure a present advancement or loan of money to the bankrupt company, and therefore saved by subdivision "d" of section 67 of the Bankrupt Act of July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]. This is the contention of Harper, Saunders, and Lynn. Is such contention well founded? We think not. The purpose of this deed of trust, it cannot be denied, was to pay off and cancel the debt growing out of the receiver certificates issued in 1903 by Edwards. This antecedent debt was due, first, as to $15,500 of it, to the assignees of Harper, Saunders, and Lynn, to whom they had indorsed the certificates straight and without limitation; and, second, as to $750, the balance, directly to said Harper, Saunders, and Lynn for their promised commission. The assignees of these receiver certificates did not know Edwards in the transfer, they only knew the payees therein from whom they obtained them, and to whom they paid their money for them, so that Harper, Saunders, and Lynn were under a moral, if not a legal, obligation to see these certificates paid.

But again we must go a step farther. For these parties to secure from this insolvent lumber company this deed of trust, sufficient to consume the sum total of its assets, to secure debts not its own, but personal ones alone of its principal stockholder and manager; debts of his incurred before its corporate birth, not one dollar of which, so far as shown, it derived any benefit of—not only stamps the transaction outside of the saving subdivision "d" of section 67 of the act, but clearly brings it within the scope of subdivision "e" of that section. It must

be held a clear fraud upon the rights of creditors, and both the deed of trust and the debt itself must be held void as to such creditors. Again, the misappropriation of these 17 $1,000 notes secured by this deed of trust executed by this bankrupt corporation, by its managing officer, to his own use, to the security of his own debt, is so clear and apparent, that such act must be held clearly unauthorized and beyond the scope of his power or right as such officer. To hold otherwise would establish the dangerous doctrine that a managing officer of a corporation, having possession of its notes and securities, could dispose of them at will. Finally, it is clear that an attempt upon the part of even a majority of stockholders to divert the corporation assets to purposes wholly outside of the scope of its charter powers, purposes that clearly can inure to no benefit to it or its stockholders and creditors as such, is ultra vires and void. We therefore, for these reasons, find no error in the ruling of the court below that the notes and deed of trust executed by the bankrupt corporation are void as against its creditors.

Coming now to the consideration of the second matter of controversy, the one relating to the claim of the American Wood Working Machinery Company, the material facts may be stated to be these: Edwards, as receiver, without authority, but representing himself to have such, purchased from the American Wood Working Machinery Company $6,000 worth of machinery, which he represented was to be incorporated in a branch plant of the Southern Saw Mills & Lumber Company, to be erected by him under order of court. The contract of sale was a conditional one in writing, whereby title to the property was to remain in the selling company until purchase price fully paid. This contract was signed by Edwards as receiver of the Southern Saw Mills & Lumber Company. A number of checks in part payment were signed and sent by him as such receiver, and it is very clear that the company recognized no other than Edwards as receiver, bound as purchaser; in fact refused to recognize any other. The machinery was in fact, by Edwards, incorporated in and made part of the plant of the Builder's Lumber Company at Marietta, N. C., instead of in that of the Southern Saw Mills & Lumber Company at Kemper, to which latter point it was shipped. The contract agreement was recorded by the American Wood Working Machinery Company on February 22, 1905. Thirty days before the Builder's Company was adjudged bankrupt the American Wood Working Machinery Company, in an action instituted in a state court, replevied and took nominal possession of the machinery, but, under protest, it suffered it subsequently to be sold by the trustee in bankruptcy. It is further insisted that the Builder's Company in fact paid $4,000 of the purchase price to the American Wood Working Machinery Company under this contract with the Southern Company, although this is doubtful. Under these circumstances the court below reached the conclusion that the American Wood Working Machinery Company was not entitled in law to a lien upon the specific property set forth in the conditional sale contract because the machinery had become fixture to Builder's Company's plant, because the latter had paid $4,000 thereon, and because said contract with the Southern Company although dated June 23, 1903, was not recorded until February 22, 1905. The court further held that the

American Wood Working Machinery Company was not therefore a creditor of the Builder's Company and not entitled to share either as a preferred or common creditor in the distribution of its assets. In this conclusion and ruling we think the court below erred. It is true the American Wood Working Machinery Company after knowledge acquired, suffered the machinery to remain with the Builder's Company, and retained the $4,000 paid by which conduct it may have estopped itself from relying upon the deceptive and fraudulent conduct of Edwards in dealing with it. It is also true that the statute law of North Carolina, as construed by its courts, requires contracts of conditional sale to be recorded under penalty of being void as to creditors and innocent purchasers without notice. But in this connection it is vital to note, as to creditors, that they must be creditors of the purchaser, of the contractee, and not of his assignee or vendee. In this case the Builder's Company never contracted with the American Wood Working Machinery Company for this machinery, but, on the contrary, the contract was wholly between the American Wood Working Machinery Company and the Southern Company. If the question was between the American Wood Working Machinery Company and the creditors of the Southern Company, then the creditors of the latter could claim the benefit of this statute; but it is well settled that creditors of an assignee can secure no superior right to that acquired by the assignee himself.

The question therefore resolves itself into the inquiry of whether the Builder's Company itself as assignee or purchaser is protected by this statute. It is now well settled that a conditional sale, independent of statute and not assailable for fraud, is valid, and a purchaser who has chattel property delivered to him under the condition that title to him shall not pass until payment is made cannot convey title to it or subject it to execution for his debt. In Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, the effect of these conditional sales with delivery of property is fully discussed, and the state of the law in many states pointed out. From this case we may safely conclude, first, that these state statutes, requiring registration of conditional sale contracts, were largely called into existence, so far as purchases from the vendee are concerned, to protect innocent purchasers of the subject-matter from what otherwise would be the superior right of property still remaining in the contractor; and, second, that this protection was solely designed to the extent only of giving notice of such superior right to prospective purchasers. In other words, to subordinate that superior right only when such purchaser was innocently ignorant of its existence. It therefore logically follows that the recordation itself is not essential, provided knowledge of this superior right is otherwise brought home to the prospective purchaser. Mr. Justice Bradley in Harkness v. Russell concludes the discussion by saying:

"But whatever the law may be in regard to a bona fide purchaser from the vendee in a conditional sale, there is a circumstance in the present case which makes it clear of all difficulty. The appellant in the present case was not a bona fide purchaser without notice. The court below finds that at the time of and prior to the sale he knew that purchase price of the property had not been paid, and that Russell & Co. claimed title thereto until such pay-

ment was made. Under such circumstances, it is almost the unanimous opinion of all the courts that he cannot hold the property as against the true owners."

And we understand the rulings of the Supreme Court of North Carolina on this question to be in accord with these views. In Brem & McDowell v. Lockart, 93 N. C. 191–195, the court in applying its statute to a case similar to this says:

"The contract, the effect of which is now in dispute, has never been admitted to registration, and as the defendant is an assignee for a valuable consideration and without notice of the contract of sale, his title must prevail."

Herein, as we understand it, is a recognition of the principles that "a defendant with notice of the contract of sale, although not registered, cannot prevail."

See, also, York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782.

Applying these principles to this case it is very clear that the Builder's Lumber Company cannot be held to be an innocent purchaser of this machinery without notice of the conditional contract under which it was purchased. Edwards, as receiver, purchased it for the Southern Company. Edwards, as such receiver, sold or turned it over to Edwards, the vice president and general manager of the Builder's Company. It was Edwards as such managing officer who caused it to be incorporated in the Builder's Company's plant; and it was Edwards as receiver and vice president and manager who made the payments. In all these transactions it was the same man Edwards contracting, selling, and buying. Nor can the claim be denied on the ground that Edwards, as receiver, had no authority as such to purchase this machinery. While this could be complained of only by those interested in the Southern Company, nevertheless, conceding such lack of authority, the contract in such case would be held to be his individual contract, and his transfer to the Builder's Company would be none the less with notice of the contract. Finally, the view that this machinery must not be paid for because it became fixture to the plant cannot avail. If it became so fixed it was by reason of the Builder's Company's acts, and no one is permitted to plead his own wrong to defeat another's right.

As to the third and last matter of controversy in regard to the integrity of the debts of the United Lumber Company little need be said. The whole question is whether these debts were paid by the issuance of certain stock of the Builder's Company to the United Lumber Company, or whether such stock was simply issued and deposited with the United Lumber Company as collateral to secure these debts. The question is solely one of fact, and the evidence is conflicting. There is no question about the original justness of the debts nor of the fact that the stock is, and was, wholly worthless. The court below held the debts valid, and that the stock was issued only as collateral. With this view we concur. It therefore follows that we affirm the rulings of the court below as to the first and third matters of controversy hereinbefore set forth, and reverse its ruling as to the second. The cause will therefore be sent back with directions to

disburse the fund from the sale of the property of the bankrupt, first, to the payment of the costs and expenses; second, to the payment in full of the balance due the American Wood Working Machinery Company on its contract for machinery furnished, together with its costs expended upon this appeal in this court and in the court below; and, third, to the payment of the common creditors, pro rata, including the United Lumber Company.

PRITCHARD, Circuit Judge. I concur in the opinion of the court in so far as it relates to the claims of the American Wood Working Machinery Company and the United Lumber Company. However, I feel constrained to dissent from the opinion of the court in regard to the claim of W. H. Saunders, R. H. Lynn, and R. N. Harper.

On Petition for Rehearing.

PER CURIAM. Rehearing denied.

PRITCHARD, Circuit Judge. Having dissented when the opinion was filed in this case as to the claim of W. H. Saunders, R. H. Lynn, and R. N. Harper, and now, after a careful consideration of the petition presented for a rehearing, I am of opinion that the rehearing asked for as to this claim should be granted, and I am constrained, therefore, to dissent from that part of the order of the court refusing to grant a rehearing in this case as to this claim.