In re GRAY.

(District Court, E. D. Oklahoma. November, 1908.)

1. SALES (§ 465*)—CONDITIONAL SALES—RECORD—WHAT LAW GOVERNS.
Where a conditional sale made in Oklahoma Territory provided for the delivery of goods in Indian Territory, it was not required to be recorded under Wilson's Rev. & Ann. St. Okl. 1903, § 4179, requiring registration in the office of the register of deeds in and for the county wherein "the property shall be kept," as such statute had no extraterritorial force in Indian Territory, by the laws of which the contract was governed.
[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. § 465.*]

2. SALES (§ 451*)—CONDITIONAL SALES—WHAT LAW GOVERNS.
Where a conditional sale is made in one state, and contemplates or expressly provides that the property is to be delivered or used in another state, it is governed by the laws of the latter.
[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1323; Dec. Dig. § 451.*]

3. SALES (§ 465*)—CONDITIONAL SALES—REGISTRATION.
Prior to Indian Territory being included in the state of Oklahoma, there was no law in such territory requiring conditional sale contracts to be recorded as a condition of their validity, either between the parties or as against third persons.
[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1353; Dec. Dig. § 465.*]

4. BANKRUPTCY (§ 178*)—CONDITIONAL SALES—VALIDITY.
Where a conditional sale contract provided for the delivery of goods in Indian Territory, there being no local law therein inhibiting such contracts, the question as to whether the fact that the goods were furnished to the buyer for resale in the usual course of business invalidated them must be tested in bankruptcy proceedings against the buyer in accordance with the general law.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 178.*]

5. SALES (§ 472*)—CONDITIONAL SALES—VALIDITY.
In the absence of a fraudulent intent, a conditional sale reserving title to the goods in the seller until the price is paid is not invalid as against creditors or purchasers because the goods were furnished for resale.
[Ed. Note.—For other cases, see Sales, Dec. Dig. § 472.*]

6. SALES (§ 469*)—CONDITIONAL SALES—PAYMENT—"MONEY."
A conditional sale contract required payment in 10 days either in cash or notes, declaring that all notes and open accounts shall be drawn payable at Oklahoma City, with 10 per cent. attorney's fees added, and that on default in the payment of any installment the seller might consider the entire indebtedness due; that the title to and the ownership of all the goods should be in the seller until the buyer's indebtedness had been paid in money. Held, that the word "money" was used in contradistinction to "notes," and did not include notes, so that the acceptance of notes did not constitute a payment sufficient to vest title to the goods in the buyer.
[Ed. Note.—For other cases, see Sales, Dec. Dig. § 469.*
For other definitions, see Words and Phrases, vol. 5, pp. 4554–4565.]

7. BANKRUPTCY (§ 318*)—CLAIMS AGAINST ESTATE—CONDITIONAL SALES—REGISTRATION—OKLAHOMA STATUTES.
Wilson's Rev. & Ann. St. Okl. 1903, § 4179, declared that conditional sale contracts should be invalid against innocent purchasers or creditors of the buyer unless registered in the county where the property was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

kept. Enabling Act June 16, 1906, 34 Stat. 267, c. 3335, under which the Indian Territory became the state of Oklahoma, provided that the laws of Oklahoma Territory should apply to said state until changed by the Legislature, but that no existing rights or contracts should be affected by the change, but should continue as if no change in the form of government had taken place. *Held* that, a contract of conditional sale of property in the Indian Territory prior to statehood being valid without registration, the seller, on the territory becoming a state, was not required to register it in order to enforce it in subsequent bankruptcy proceedings against the buyer.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

In Bankruptcy. Petition to review an order of a referee.

Crook, Kyle & Crockett, for trustee and petitioner.

McConnell & Bland, for intervener.

CAMPBELL, District Judge. On February 29, 1908, R. S. Gray filed his petition in voluntary bankruptcy in this court, and was subsequently adjudicated a bankrupt, and a trustee duly appointed. Thereafter, on March 19, 1908, B. F. Avery & Sons, creditors of said bankrupt, filed a petition with the referee, seeking to reclaim certain wagons and other farming implements included with the bankrupt's goods of which the trustee had taken possession. The wagons sought to be reclaimed were held by the bankrupt under a contract, a copy of which is attached to the petition as "Exhibit B." The other articles sought to be reclaimed were held by the bankrupt under a contract, a copy of which is attached to petition as "Exhibit A." It is contended by the petitioner that these are contracts of conditional sale, and that, under the terms thereof, the title to the property sought to be reclaimed is in the petitioner, and that the petitioner is therefore entitled to recover possession thereof from the trustee.

As appears from the order of the referee, dated April 14, 1908, after a hearing on said petition at which the trustee and petitioner appeared and presented their respective contentions, the referee found that the petitioner sold the property sought to be reclaimed to R. S. Gray and the Gray Mercantile Company, of which R. S. Gray was the sole owner and proprietor, under contracts that the title of said company should remain in the petitioner until fully paid for; that said R. S. Gray was given full and unlimited power to sell the property in the course of his business as a merchant. The referee in effect finds that the contracts consisted of conditional sales, and that subsequently the said petitioner settled with the bankrupt and took his notes for the unpaid part of the purchase price; that said notes were unconditional in their terms. The referee finds that the action of the petitioner in delivering the goods to the bankrupt and giving him permission to sell the same in the course of his business as a merchant was a constructive fraud upon the rights of other creditors, the said property having been delivered to the bankrupt for the purpose of sale, and not for the use or consumption. The referee, therefore, denies the petition. The petitioner presents his petition to this court for review of the order of the referee.

The contracts of sale referred to differ in some particulars in their

terms and conditions. It may be seriously questioned whether the contract originally made with the Kentucky Wagon Manufacturing Company, covering the wagons, and afterwards assigned to the petitioner, is not an agency contract, instead of a contract of conditional sale. John Deere Plow Co. v. McDavid, 14 Am. Bankr. Rep. 653, 137 Fed. 802, 70 C. C. A. 422.

But as the parties concede these instruments to be contracts of conditional sale, they will be so treated, and the question then arises as to their validity as such under the facts of this case, and the right of the petitioner, if any, under them. Does the fact that these contracts provide for the furnishing of goods to the bankrupt, giving him permission to sell the same in the course of his business as a merchant, for the purposes of sale and not for his own individual use or consumption, constitute a constructive fraud on the right of creditors? It is contended that these are Oklahoma Territory contracts, and the following provision of the Oklahoma Territory law is relied upon:

"That any and all instruments in writing, or promissory notes now in existence or hereafter executed, evidencing the conditional sale of personal property, and that retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept, and when so deposited, shall be subject to the law applicable to the filing of chattel mortgages; and any conditional, verbal sale of personal property, reserving to the vendor any title in the property sold, shall be void as to creditors and innocent purchasers for value." Wilson's Rev. & Ann. St. Okl. 1903, p. 966, § 4179.

The contract "Exhibit A," having been based upon a proposition directed to petitioner at Oklahoma City, Okl. T., and by its provisions to be accepted at that place, is clearly a contract entered into in Oklahoma Territory for the delivery of goods, however, at a point outside of the territory. It will be noted that the Oklahoma law provides that an instrument evidencing a conditional sale, or a copy, "shall be deposited in the office of the register of deeds in and for the county wherein the property shall be kept." The property covered by the contract in this case was to be kept at Bennington, Ind. T. The statute relied upon could have no extraterritorial effect, and clearly applied only to goods to be kept within Oklahoma Territory. The rights of the parties herein, at least until Oklahoma became a state, the effect of which will be noted hereafter, must be decided by the laws in force in Indian Territory at the time the contract was entered into and the goods delivered. In re Legg et al. (D. C.) 96 Fed. 326. "Where a conditional sale is made in one state, which contemplates or expressly provides that the property is to be delivered or used in another state, the law of the latter state governs." Loveland on Bankruptcy, 448, 449. In February, 1907, when these contracts were entered into, there was no law in force in Indian Territory requiring contracts of conditional sale of personal property to be recorded, as a condition of their validity, either between the parties thereto or as against their persons. So far, therefore, as the failure to record was concerned, this did not in any way affect the right of petitioner, as against the bankrupt, to recover the goods on default or condition broken, up to the time Oklahoma became a state.

Did the fact that the goods were furnished bankrupt for sale in the usual course of business invalidate these contracts? There being no local law of the Indian Territory inhibiting contracts of conditional sale, such as those in question, they must be tested under the general law. In American & English Encyclopedia of Law, vol. 6, p. 440, it is said:

"Sales of personal property on condition that title is not to vest in the purchaser until the payment of the purchase money, or upon some other condition, are of very frequent occurrence, and the validity of such sales as between the parties thereto is unquestioned. * * * In most jurisdictions, in the absence of fraud, the rule is the same as to third persons, though in some states it is held otherwise, and in a number of states all conditional sales must be recorded in order to be valid against third persons without notice."

In the case of Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, Mr. Justice Bradley, in sustaining a contract of conditional sale, said:

"Such contracts are well known in the law, and often recognized, and when free from any fraudulent intent are not repugnant to any principle of justice or equity, even though possession of the property be given to the proposed purchaser. * * * The intent of the parties will be recognized and sanctioned where it is not contrary to the policy of the law. This policy, in England, is declared by statute. It has long been a provision of the English bankruptcy laws, beginning with 22 James I, c. 19, that if any person becoming bankrupt has in his possession, order, or disposition, by consent of the owner, any goods or chattels of which he is the reputed owner, or takes upon himself the sale, alteration, or disposition thereof as owner, such goods are to be sold for the benefit of his creditors. This law has had the effect of preventing or defeating conditional sales accompanied by voluntary delivery of possession, except in cases like those before referred to; so that very few decisions are to be found in the English books directly in point on the question under consideration. * * * This presumption of property in a bankrupt, arising from his possession and reputed ownership, became so deeply imbedded in the English law that in process of time many persons in the profession, not adverting to its origin in the statute of bankruptcy, were led to regard it as a doctrine of the common law; and hence, in some states in this country, where no such statute exists, the principles of the statute have been followed, and conditional sales of the kind now under consideration have been condemned, either as being fraudulent and void as against creditors, or as amounting in effect to absolute sales with a reserved lien or mortgage to secure the payment of the purchase money. This view is based on the notion that such sales are not allowed by law, and that the intent of the parties, however honestly formed, cannot legally be carried out. The insufficiency of this argument is demonstrated by the fact that the conditional sales are admissible in several acknowledged cases, and, therefore, there cannot be any rule of law against them as such. They may sometimes be used as a cover for fraud, and, when this is charged, all the circumstances of the case, this included, will be open for the consideration of the jury. Where no fraud is intended, but the honest purpose of the parties is that the vendee shall not have the ownership of the goods until he has paid for them, there is no general principle of law to prevent their purpose from having effect. In this country, in states where no such statute as the English act referred to is in force, many decisions have been rendered sustaining conditional sales accompanied by delivery of possession, both as between the parties themselves and as to third persons." See Canning Machine Co. v. Fuller, 20 Am. Bankr. Rep. 157, 158 Fed. 588, 86 C. C. A. 46; American Machinery Co. v. Norment, 19 Am. Bankr. Rep. 685, 157 Fed. 801, 85 C. C. A. 165; Matter of Hess (D. C.) 14 Am. Bankr. Rep. 644, 138 Fed. 954.

In the case of In re Dunlop, 19 Am. Bankr. Rep. 363, 156 Fed. 545, 86 C. C. A. 435, Judge Sanborn, of the Circuit Court of Appeals for the Eighth Circuit, said:

"The next contention of counsel for the trustees of the Western Company is that the agreement was fraudulent and voidable against the trustee, because it permitted the conditional vendor to sell the merchandise in regular course of business, but provided that the proceeds should be credited upon its notes, or accounts, or held as a collateral security therefor, and because it was not filed or recorded in due time in any public office; and they cite the authorities from New York, Illinois, and Oregon, which sustain that position. * * * But the general rule and weight of authority in this country, the established rule of property in Minnesota, and the established rule in this court are otherwise. Trustees of bankrupt estates have no better title, in the absence of fraud, than the bankrupt and his creditors had at the time of the filing of the petition in bankruptcy."

There being no claim of fraudulent intent made in this case, it must be held to come clearly within the doctrine laid down by the cases above cited. The decisions of the United States Supreme Court and those of the Circuit Court of Appeals for the Eighth Circuit were controlling in the Indian Territory as to such matters when the goods in question were delivered under these contracts, and it therefore follows that as between the petitioner and the bankrupt, as well as third persons, these contracts were valid.

But it is contended that by accepting the notes of the bankrupt the petitioner has defeated its right to enforce the contracts. The testimony shows that no notes have been given for the unsold wagons covered by the contract with the Kentucky Wagon Manufacturing Company, so as to that contract the defense that notes have been accepted does not apply. In the other contract it is provided:

"(1) I, or we, agree, to make settlement in accordance with prices herein specified, within ten days from date of invoice, either in cash, less discount, if any, payable in Oklahoma City, Louisville, or New York exchange or by notes, in accordance with terms hereinafter specified; all notes to be drawn with exchange on New York and payable after maturity at Oklahoma City, Oklahoma.

"(2) All notes and open accounts owing by me or us to you for goods herein ordered, as well as for all subsequent purchases, shall be payable at Oklahoma City, Oklahoma, and ten per cent. attorney's fees shall be added to the principal and interest of any claim placed in attorney's hands for collection. Default in the payment of any installment or part of the indebtedness when due, shall at your option exercised at any time after said default, mature mine or our entire indebtedness. which shall then become due and payable on demand at Oklahoma City, Oklahoma.

"(3) The title to and ownership of all goods which may be shipped under this contract, as well as of all other goods shipped by you to me or us, on subsequent orders, shall be your property until all my or our indebtedness to you shall have been paid in money; but nothing herein contained shall release me or us from making payments as herein agreed."

In American Encyclopedia of Law, vol. 6, p. 475, it is said:

"Where a sale is made on condition that the vendee shall give a note or other security for the price, the property and the goods so sold and delivered does not vest in the purchaser until the condition is complied with or waived. But title does not necessarily pass when a note is given before the note is paid."

To which is appended the following note:

"The giving of a note for a balance due on the price of property sold, with the reservation of title until payment, will not vest title in the vendee in the absence of an express agreement."

From a careful reading of the terms of the contract above quoted, it appears clear that it was not the intention of the parties that the title to the goods should pass upon the delivery of the notes referred to, but that the term "money" was used in contradistinction to the term "notes," the latter being but evidence of indebtedness, and that, when it was provided that title should not pass "until my or our indebtedness to you shall have been paid in money," the term "money" was not intended to include notes. It is therefore held that the condition necessary to pass the title under the terms of the contract was not fulfilled by giving of the notes in question. Of course, such of the notes as covered goods recovered of this trustee cannot be collected, the petitioner waiving its right to such collection by electing to take the goods in lieu thereof.

Under the enabling act of June 16, 1906, 34 Stat. 267, c. 3335, Indian Territory became the state of Oklahoma on November 16, 1907. By the terms of this act it was provided that:

"The laws in force in the territory of Oklahoma, as far as applicable, shall extend over and apply to said state until changed by the Legislature thereof."

In the state Constitution adopted pursuant to said enabling act are the following provisions:

"Sec. 449. Change from Present Government.—In order that no inconvenience may arise by reason of a change from the forms of government now existing in the Indian Territory and in the territory of Oklahoma, it is hereby declared as follows:

"Sec. 450. Existing Rights; Process.—Section 1. No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. And all processes which may have been issued previous to the admission of the state into the Union under the authority of the territory of Oklahoma or under the authority of the laws in force in the Indian Territory shall be as valid as if issued in the name of the state.

"Sec. 451. Oklahoma Laws in Force.—Section 2. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

Did the general provision extending the laws of Oklahoma Territory over Indian Territory make the act heretofore quoted, relative to filing instruments of conditional sale, applicable to existing contracts of conditional sale in Indian Territory on and after November 16, 1907? At that time the petitioner herein had an existing right or claim under these contracts. We have decided that up to that time he was not required to file or record the instruments evidencing the contracts. If, then, upon the advent of statehood, it be held that the act requiring the filing of such contracts became applicable to Indian Territory, and may now be urged by the trustee as against petitioner's claim, it seems clear that, by the change in the form of government, petitioner was

subjected to the inconvenience of filing its said contracts as provided by the statute, or that, upon failure to do so, its existing rights or claims under said contracts were materially affected by the change. But this result the Constitution expressly provides shall not follow. In my opinion, to make such law applicable to such existing contracts would be repugnant to the Constitution, and therefore inapplicable under the provisions of section 451 above quoted.

It is therefore held that the failure of petitioner to file said contracts of conditional sale or copies thereof in the manner provided by the law of Oklahoma Territory, above quoted, does not defeat his right to recover from the trustee in this proceeding. The order of the referee herein is therefore annulled and set aside. So ordered.