In re A. G. CROSBY CO.

(District Court, D. Massachusetts. April 16, 1912.)

No. 16,540.

CORPORATIONS (§ 30*)—ORGANIZATION — PURPOSE — CONTINUATION OF BUSI-
NESS OF PARTNERSHIP—PARTNERSHIP LIABILITIES—ASSUMPTION.

Where a corporation is organized to take over and continue the business of a partnership acquiring the partnership assets and assuming its liabilities, and the partnership was solvent at the time, and the corporation continued to be solvent for a considerable time thereafter, the corporation assets were liable in bankruptcy for a note executed by it to a creditor of the firm to cover a part of the firm's debts so assumed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

In Bankruptcy. In the matter of the bankruptcy proceedings of the A. G. Crosby Company. On petition for review of referee's order allowing the claim of the Saginaw Milling Company. Affirmed.

Walter A. Buie, for Saginaw Milling Co.

French & Curtiss, for objecting creditor.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DODGE, District Judge. The claim allowed is made upon two notes given by the bankrupt, one dated January 20, 1910, for $1,250, and one dated February 8, 1910, for $6,750. The first note was payable in six months; the second in four months from date. Adjudication in this case was on November 21, 1910, upon an involuntary petition filed November 5, 1910. Besides the amounts claimed on the notes, including interest, a balance of account is claimed for various items on various dates between February 24 and November 1, 1910, less certain credits on June 30, 1910. The petitioner for review complains, in the first place, of the allowance of the note for $6,750.

The bankrupt company was incorporated under Massachusetts laws June 1, 1908. A note for $6,750, on four months' time, was given by it to this creditor June 8, 1908, and of this note there have been five successive renewals by similar notes; the last being the note of February 8, 1910, which has been allowed by the referee. This note was given under the following circumstances:

The bankrupt corporation was organized for the purpose of taking over a business of dealing in hay and grain, which A. G. Crosby had previously conducted at Boston since 1905. In the course of that business, there had been transactions between him and the Saginaw Milling Company, a Michigan corporation, the creditor whose claim is now in controversy. From and after February, 1906, these transactions had been carried on under an agreement in writing between Crosby and the Milling Company to the effect that each should contribute to the capital of the business conducted by Crosby, and that the profits of the business should be equally divided between them; there being no express provisions regarding losses. While the business was being carried on under this agreement, the Milling Company made advances to Crosby on his notes, and the notes so given were renewed from time to time. When the corporation was formed, June 1, 1908, it did in fact take over Crosby's business, and carried it on until it became bankrupt as above. On June 1, 1908, the Milling Company held five of the notes above referred to, amounting in all to $6,750, and coming due at various dates between June 12 and July 22, 1908. After its formation the corporation gave the note for $6,750, above referred to, in exchange for the five notes mentioned. Another note held by the Milling Company for $1,250, due June 5, 1908, was paid by the corporation June 12, 1908, and forms no part of the claim now sought to be proved. To the note included in this proof of claim, for the same amount, dated January 20, 1910, which note is admitted in the petitioner's brief to be a valid claim against the bankrupt, the petitioner's objection, below considered, to the note for $6,750 does not apply. The main objection which the petitioner raises to the allowance of the $6,750 note is that it was beyond the powers of the bankrupt corporation to assume a liability of A. G. Crosby, and that the note represents a liability so assumed.

That the bankrupt corporation was formed to take over A. G. Crosby's business has been stated. The arrangement that it should do so was agreed upon between him and persons connected with or representing the Milling Company. The incorporators were Crosby himself and various persons acting under the direction of him or of the Milling Company. Upon the formation of the corporation, the stock was distributed according to agreement between him and members of the Milling Company, so that there should be held for the Milling Company's benefit 127½ shares out of 246; the remainder being held by Crosby.

It was a part of the agreement under which the corporation was formed as above that it should acquire all the assets of Crosby's business, and, as against these, should assume certain liabilities incurred by him in connection therewith. This is what was in fact done, whether or not in doing it the requirements of the Massachusetts statutes regarding the conveyance of property to the new corporation or the payment in of its capital in cash were properly observed.

Crosby's five notes above referred to, for which the corporation's note for $6,750, now in question, was substituted on June 8, 1908, after the corporation was formed, formed a part of the indebtedness which it had been agreed the corporation should assume in connection with the assets it acquired from Crosby.

The referee has found that the business of A. G. Crosby was solvent when the corporation took it over; or, in other words, that the assets it acquired exceeded the liabilities it assumed. I find nothing in the facts sufficient to require a different conclusion. The corporation, from and after June 1, 1908, continued the business carried on before and up to that date by Crosby under his so-called partnership agreement with the Milling Company, and, as the referee has found, it "continued to be solvent for a considerable time." This finding, also, is one which I find no sufficient reason to question. If these were the facts, there is nothing from which I can conclude that no adequate benefit to it, or no sufficient consideration in return for its assumption of Crosby's liabilities, was received by the corporation. It assumed them as part of the same transaction by virtue of which it got and has since kept its property. As against the Milling Company, which then permitted the property to pass to the corporation without asserting such claim therein or interest therein as then belonged to it because of Crosby's liabilities to it, it cannot say that its agreement to discharge those liabilities, or any of them, was one which it had no power to make. Under the circumstances, it would seem to have become bound by these liabilities, even without express assumption of them. Du Vivier v. Gallice, 149 Fed. 118, 80 C. C. A. 556.

A further objection raised by the petitioners for review is that the liability to the Milling Company evidenced by the note is a liability to a partner; and that a partner of a bankrupt cannot prove his claim in competition with creditors of the copartnership. This would seem to be a question relating rather to the marshal-

ing than to the mere allowance of the claim. But it depends, in any event, upon the proposition that the Milling Company and the bankrupt corporation were partners at the time of the bankruptcy. No business under the agreement of 1906 appears to have been done after the corporation was formed on June 1, 1908. The books of the business done up to that date, under the agreement of 1906, were closed, as stated in this petitioner's brief, and new books were opened by the corporation. I do not see how it can be said that the corporation was formed to continue, or did continue, the "co-partnership" previously existing between Crosby and the Milling Company. What was continued was the business which that co-partnership had been carrying on.

The petition for review raises the following further objections: "(1) That the referee's order disallowed, in set-off, the claim of said bankrupt against the Saginaw Milling Company. (2) That it disallowed the petitioner to use the name of the trustee to prosecute actions against the Saginaw Milling Company and others."

To neither of these matters is there any reference in the certificate before me. The only order transmitted with the certificate is the order indorsed on the claim itself and dated May 25, 1911, "Claim reallowed after hearings." There is nothing before me, therefore, which enables me to deal with these objections. But if, as would appear from the petitioner's brief, it is contended that the bankrupt corporation has paid to the Milling Company other items of the liabilities which it assumed, and now has the right to recover back what it has thus paid, or to set it off against the claim which has been allowed, the contention would seem to be adversely disposed of by the conclusions at which I have arrived as above.

The referee's order is approved and affirmed.