YORK MFG. CO. v. BREWSTER.†

(Circuit Court of Appeals, Fifth Circuit. December 7, 1909.)

No. 1,831.

1. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—PROPERTY HELD UNDER CONDITIONAL SALE CONTRACT.

A reservation of title in a contract of conditional sale, which, although the contract is unrecorded, is good as against a bankrupt, is good as against his trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 199; Dec. Dig. § 140.*]

2. CORPORATIONS (§ 448*)—CONTRACTS OF PROMOTERS—CONDITIONAL SALES.

Where associates, who hold property subject to a lien or under a conditional sale, combine to create a corporation to take the property and to which they transfer it, such associates being the only persons who have any substantial interest in the corporation, the corporation stands in no better position than that in which the associates stood.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1789–1791; Dec. Dig. § 448.*]

3. CORPORATIONS (§ 448*)—CONTRACTS OF PROMOTERS—CONDITIONAL SALES.

Appellee made an agreement with a partnership for the organization of a Texas corporation to manufacture ice, for which the partners were to furnish the machinery, receiving stock in payment. A part of such machinery was afterward purchased by the partners from appellant under a contract of conditional sale by which appellant reserved title. The corporation was organized by appellee and the partners, to whom practically all of the stock was issued; appellee, who held more than one-third, be-

coming vice president and the active manager. The machinery was shipped to the corporation, but the sale contract was not recorded, as required by Rev. St. Tex. 1895, art. 2549, to render it valid as against bona fide purchasers. Subsequently appellee made advances to the company, for which he took mortgages on its property, including the machinery, and the company was afterwards adjudged bankrupt. *Held*, that under such facts appellant's title was good against the company and its trustee in bankruptcy, and that appellee, as one of its promoters, incorporators, and active officers, was charged with notice of appellant's rights, and took his mortgage subject thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1789–1791; Dec. Dig. § 448.*

Acts of corporators and promoters, see notes to Yeiser v. United States Board & Paper Co., 46 C. C. A. 576; El Cajon P. Cement Co. v. Robert F. Wentz E. Co., 92 C. C. A. 450.]

Appeal from the District Court of the United States for the Southern District of Texas.

In the matter of the Home Ice Company, bankrupt. Appeal by the York Manufacturing Company from an order confirming a report of the referee. Reversed.

Newton C. Abbott, for appellant.

Sterling Myer (Hunt, Myer & Townes, on the brief), for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. The ultimate question to be decided here is whether the appellant or the appellee has the title and ownership of certain ice-making machinery, the subject of the suit.

The appellant claims title as the original owner, who sold it to W. O. Drake & Co. and retained the title till the purchase money was paid. The appellee claims title as bona fide purchaser from the Home Ice Company, Drake & Co. having passed the machinery on to the Ice Company; and he also claims as purchaser at a judicial sale, it having been sold as a part of the ice plant of the Home Ice Company, bankrupt. The claim of appellant was interposed before the appellee's purchase at the bankruptcy sale, and the plant is still under the control of the bankruptcy court.

The case was begun by an intervention filed by the appellant in the matter of the Home Ice Company, a Texas corporation, which had been adjudicated an involuntary bankrupt by the court below. The intervening petition showed that the York Manufacturing Company, a Pennsylvania corporation, on May 13, 1905, sold to W. O. Drake & Co., a partnership composed of W. O. Drake and J. L. Clarke, certain ice-making machinery, which is described; that the machinery was to form a part of an ice plant at Houston, Tex.; and that it was so used in the ice plant of the Home Ice Company. The price to be paid for the machinery was $5,650, one-fourth cash, which was paid. The written contract of sale and the notes given for the unpaid purchase money were made exhibits to the petition. The contract provided:

"That the title to and ownership of the machinery * * * shall remain in the York Manufacturing Company until the entire purchase price herein

agreed to be paid, and all notes and other securities given to secure the same, or any part thereof, shall be actually paid in cash."

The petition concluded with a prayer for an order directing the trustee of the bankrupt estate to deliver the machinery to the intervening petitioner, or that the claim shown by the notes and contract be paid.

The appellee, E. J. Brewster, filed an answer contesting the appellant's claim. He contended that the appellant had no claim to the machinery or lien on it, there being no contractual relation between the appellant and the Home Ice Company. He also contended that, if appellant ever had any lien on or claim to the property as against W. O. Drake & Co., it had none as against the Home Ice Company, because it—

"had become the purchaser for value from Clarke and Drake of all of said machinery without notice and in good faith, * * * and that thereafter said Brewster did by reason of mortgages and deeds * * * become the innocent purchaser for value and without notice of said machinery. * * *"

The testimony of witnesses was taken, and the referee made a report on the facts and the law. There was no controversy in the evidence nor denial in the referee's report of the fact that appellant made the sale upon the terms stated in the intervening petition; that is, that it retained title till the purchase money was paid, and that the purchase money remained unpaid, as alleged. The referee reported that the appellee had the superior claim to the machinery, and, as we understand it, he did so on the theory that the appellee was a bona fide purchaser for value.

The Texas statute provides that:

"All reservations of the title to or property in chattels as security for the purchase money thereof shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. * * *" Rev. St. Tex. 1895, art. 2549.

The appellant failed to have the contract reserving title recorded until July 26, 1906. In the meantime the machinery had been received from the purchasers by the Home Ice Company, and that company had borrowed large sums of money from the appellee, and had executed to him several mortgages to secure the sums borrowed, one of which the referee held embraced the machinery in suit. There is no doubt but the reservation of title by the appellant as seller was good against the buyers of the machinery, W. O. Drake & Co. (Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285); and, if the title has remained in appellant, it did not pass by the bankruptcy proceedings to the trustee. The trustee obtained no better or other title than the bankrupt had. York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782.

The contention of the appellee is that the position of the Home Ice Company and the position of himself is better than that of the buyers, W. O. Drake & Co.; that, while the written contract or conditional sale was withheld from record, they became bona fide purchasers for value without notice. That contention presents the pivotal

question in the case. To decide whether or not the appellee is entitled to protection as a bona fide purchaser without notice requires an analysis of the evidence, divesting it of all extraneous considerations and presenting only the material facts which relate to this one question.

W. O. Drake & Co. was a partnership composed of W. O. Drake and J. L. Clarke. Its business and purpose was to organize, equip, and promote the organization of ice factories. In 1905 Drake and Clarke began negotiations with the appellee, E. J. Brewster, for the organization of a corporation to erect an ice plant in Houston, Tex. The firm claimed to have in Pennsylvania an ice plant worth $100,000. Brewster made an agreement with the firm that they were to furnish an ice plant of 90 tons' capacity, complete, worth $100,000 and fully paid for; that a corporation was to be formed to which the plant would be transferred; that $80,000 was to be the capital stock of the corporation, and all the stock was to be issued to Drake and Clarke for the plant, but that they were to transfer $30,000 of the stock to Brewster for his assistance in organizing the corporation, and because he agreed to advance money needed to buy a site and for other purposes, his advances, however, to be secured by mortgages. Their plant not being complete, it was to carry out this agreement and furnish a complete plant that W. O. Drake & Co. bought the ice machinery involved in this suit on the terms already stated. Pursuant to the agreement between the appellee and Drake and Clarke, the corporation which was to receive and own the ice plant was formed and named the "Home Ice Company," and it received the plant from Pennsylvania, to which was added the machinery in suit. The articles of incorporation conformed to the Texas statutes, and were signed by W. O. Drake, E. J. Brewster, and W. B. Jones as incorporators. The company elected as directors E. J. Brewster, W. O. Drake, J. L. Clarke, W. B. Jones, and B. B. Gilmer, and Clarke was made president and Brewster vice president and treasurer. The $80,000 of stock was issued—$30,000 to E. J. Brewster, the appellee, and $50,000 to Drake and Clarke, except that out of the shares of Drake and Clarke one share was issued to Jones and one share to Gilmer to qualify them to act as directors. The appellee, Brewster, remained an officer and stockholder of the Home Ice Company from its organization till its bankruptcy. He managed its finances, advanced money to it, and apparently had chief control of it. It was soon after the incorporation of the Home Ice Company that W. O. Drake & Co., or W. O. Drake and J. L. Clarke, surrendered to the company, or caused to be placed in its plant, the machinery in suit.

It must be remembered that the property had been bought to comply in part with the contract between Brewster and W. O. Drake and J. L. Clarke, and no one had any substantial interest in the corporation formed to receive the ice plant except Brewster, Drake, and Clarke. Unquestionably the lien or retention of title by appellant was good against Drake and Clarke. It would be passing strange if the buyers could destroy the lien or title retained by the seller by forming a corporation to take the property and having issued to themselves stock in

lieu of the property. And we cannot see that the situation is made greatly different by the fact that part of the stock, $30,000, is issued to Brewster for aiding in the organization of the corporation and for promises by him of further aid. It may be true that notice to a promoter of a corporation is not notice to the corporation itself when formed; but where associates, who hold property subject to a lien or under a conditional sale, combine to create a corporation to hold the property, and to which they transfer it, such associates being the only persons who have any substantial interest in the corporation, the corporation stands in no better position than that in which the associates stood. Davis, etc., Wagon Wheel Co. v. Davis, etc., Wagon Co. (C. C.) 20 Fed. 699.

But it is further urged that the appellee became a bona fide purchaser by reason of cash advances to the Home Ice Company, to secure which he received a mortgage on the machinery. In considering this contention, reference must be had to the facts already stated. The appellee was an associate of the promoters of the Home Ice Company, made with them the agreement which led to its organization, was one of the three incorporators, was one of its largest stockholders, holding more than a third of its stock, was an active director, vice president, and treasurer, and, in fact, its chief controller. Under these circumstances, and in view of the facts in the record, we hold that he was charged with notice of the manner in which the Home Ice Company obtained the machinery in suit, and of the fact that the title was retained by the appellant to secure payment of the purchase money, and that, as mortgagee of the company, he obtained no better title than the company had.

A different conclusion would deprive the seller of the benefit of his forethought in reserving title as security, and enable the buyer to pass the property to a corporation to hold it for him. He could enter the corporation's doors, and so deal with it as to pocket the spoils; but the doors would be locked against the seller seeking the price. To avoid a result so unjust, equity will disregard forms, ignore the corporate entity, and treat the buyers, promoters, and their associates in the enterprise as the parties really interested.

The appellant is entitled to have its property restored (In re Great Western Mfg. Co., 152 Fed. 123, 125, 81 C. C. A. 341); or, in lieu of the property, to payment of the debt due to it according to the terms of the contract and notes exhibited with the intervening petition. If the property is surrendered, the appellant should place in court, subject to the court's order, the stock which the record shows is held as collateral; if the machinery is not delivered to appellant, and the moneyed decree in lieu of it is to be entered, the collateral aforesaid must be sold, and the proceeds applied to the payment of the debt due appellant, and decree taken only for the remainder left unpaid.

The decree of the District Court, confirming the referee's report is reversed, and the cause remanded for further proceedings in conformity to the opinion of this court.