Booth, Judge,
reviewing the facts found to be established, delivered the opinion of the court.
This is a suit under section 162 of the Judicial Code to recover the proceeds in the Treasury accumulated there from the seizure and sale of cotton subsequent to June 1, 1860, by *52 a special agent of the Treasury appointed for the purpose. The facts are not in dispute. T. Alonzo Walker and Augusta C. Walker, afterwards Augusta C. Todd, were brother and sister, being the minor children and sole heirs at law of William G. Walker, deceased, a citizen and resident of Bienville Parish, La. Prior to July 17,1854, Jasper Gibbs, a resident of the same locality, was legally appointed tutor for said minor children, and continued to act as such until January 24,1860. On this latter date one John H. Walker succeeded Gibbs as tutor for Augusta O. Walker, Gibbs remaining as tutor for T. Alonzo Walker. On May 23,1863, Gibbs, acting-in his capacity as tutor, made and executed an alleged bill of sale in writing, wherein he undertook to sell to the Confederate States Government 198 bales of cotton, the joint property of T. Alonzo and Augusta O. Walker, accepting in payment for the cotton $17,000 in bonds of the Confederate States of America and $416.20 in cash. The written instrument is set forth in haec vert a in the findings. The cotton was never in the physical possession of the Confederate States of America, remaining on the Walker premises subject to order. On August 25,1865, it was seized by a special agent of the Treasury Department, sold, and the proceeds of sale deposited in the United States Treasury. The minor children of Walker never received the Confederate States of America bonds, no authority was ever granted the tutor to sell the cotton, and no account of the sale or the proceeds arising therefrom was ever made or reported to any court by either tutor. A claim was made by the original claimants for the loss of the cotton under the act of May 18, 1872, 17 Stat., 134, the same being-denied under the theory of a lawful seizure, the cotton belonging to the Confederate States Government.
If the cotton in issue was the property of the Confederate States Government, it is obviously true that no recovery could be had under the act of 1872 or under the present statute. Whitfield v. United States, 92 U. S., 165; Thompson v. United States, 246 U. S., 547.
The single issue, therefore, is as to the ownership of the cotton. The invalidity of the sale to the Confederate States of America is manifestly predicated upon the then minority *53 of the Walker children. T. Alonzo Walker did not attain his majority until 1869, and his sister, Augusta C., was the younger of the two. It seems from the face of the record to require little argument to sustain the case. The relationship of tutor and minor under the laws of Louisiana is set forth at length and in detail in the civil code of the State, edition 1861. It is quite unnecessary to repeat them here. Suffice it to say that all the salutary provisions looking toward the conservation and jealous care of the minor’s property and person obtain. The tutor’s authority in the premises is circumscribed by the usual wholesome restraints that absolutely preclude him from dealing with the minor’s estate in any other way than therein prescribed. Abraham v. Lob, A. D. 1883, 35 La. Annual, 377, 381; Schiller v. N. O. R. W., A. D. 1884, 36 La. Annual, 77; Fix v. Koepke, 44 Ann., 745; White v. Nesbit, 21 La., 600.
The defendants contest the right of recovery, not upon an insistence' going to the validity of the sale as between the minors and the Confederate States of America, but, if we correctly grasp it, upon the theory of the transaction as an act of war by the Confederate Government; that while the minors unquestionably had a right of action against the tutor, nevertheless it does not inure to them under section 162 because the cotton had been sold to and was in the possession of the Confederate States of America at the time of taking by the special agent of the United States Treasury, and therefore his seizure was a lawful one, no duty resting upon him to ascertain more respecting title than was obvious from the written bill of sale before him.
The Supreme Court in Whitfield's case decided that the Confederate States Government could acquire title to personal property by purchase from the owner thereof. “ Contracts of sale made in aid of the rebellion will not be enforced by the courts, but completed sales occupy a different position.” If, then, power resided in the Confederate Government to make a contract of sale, can it be said that under the terms of section 162 of-the Judicial Code this court is precluded from going into the transaction to ascertain the validity of the same? Under section 162 of the code this *54 court is granted jurisdiction “to hear and determine the claims of those whose property was taken subsequent to June first, eighteen hundred and sixty-five * * * and the Secretary of the Treasury shall return said net proceeds to the owners thereof, on the judgment of said court.” The vital issue, the jurisdictional fact under the law, preliminary to further investigation is ownership. Whatever merit there may be in defendants’ contention, it fails of applicability here, for the Congress of the United States by positive legislation has opened this court to a class of claimants, giving them both a right and a remedy whereby they may have redress for the seizure and sale of their cotton under the circumstances therein mentioned, a statute which by its terms supersedes the general rules applicable to war and brings the transaction to a justiciable issue. The intention of Congress is explicit and free from ambiguity. The fact of possession by the Confederate States of America can not possibly estop a rightful claim of ownership. If the Confederate States of America could by acceptance of possession thereby affirm and legalize a transaction admittedly illegal and Amid, then section 162 of the code would be decidedly impotent in reaching all of the class it was patently intended to reach. The special agent of the Treasury was put on notice that he was dealing with the property of minors; the bill of sale disclosed the fact; he seized the property at his oavii peril, in view of section 162 of the code, and it can no more be said that his acts are unquestionable than it can be successfully asserted that an acknowledged wrongdoer can by subsequent conduct convert the illegal transaction into one within the protection of the law to the detriment of the party wronged. The cotton in this case was not captured or seized by the Confederate States of America. The transaction was one of bargain and sale, similar in this respect to the Whitfield case, and the rules of international law do not apply.
The cotton in question was the acknowledged property of two infants. It was lawfully in the custody of tutors to be dealt with in conformity with the law authorizing their appointment. It could not be sold except in the way specifically marked out in the Louisiana Code, and the minors were remediless until 1872. The very instant they could dis *55 avow the sale they did so. An adverse decision prolonged the repose of the claim, and it was not until the enactment of the present law that it could again be asserted. This, we think, constitutes a sufficient disavowal to preclude any assumption of ratification after the minors became sui juris, and in our opinion brings the case fairly within the law.
Judgment is awarded the plaintiffs in the sum of $17,305.84, to be paid as directed by section 162 of the Judicial Code. It is so ordered.