## UNITED STATES v. BEAVER RUN COAL CO.
### No. 6637.

Circuit Court of Appeals, Third Circuit.

Oct. 28, 1938.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Wm. B. Waldo, Sp. Assts. to Atty. Gen., and Charles F. Uhl, U. S. Atty., and Orris Bennett, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa.

Charles S. Evans, of Ebensburg, Pa., and John Harper, of Philadelphia, Pa., for appellee.

Before DAVIS and BIGGS, Circuit Judges, and WATSON, District Judge.

DAVIS, Circuit Judge.

The question here at issue is whether or not, under the facts of this case, the appellee's mortgage lien upon certain property belonging to the Boucher-Cortright Coal Company (hereinafter referred to as the Coal Company) is entitled to priority over the government's tax lien upon the same property.

The District Court answered this question in the affirmative and the government appealed to this court.

On June 9, 1928 taxes, plus interest amounting to $9,093.57, were assessed against the Coal Company. Ten days later written notice of assessment and a written demand for payment were served upon that company.

On July 16, 1928, in consideration of a loan of $50,000 from the appellee, the Coal Company executed a mortgage in that amount to the appellee upon certain mining property in Cambria County, Pennsylvania. The testimony indicates that the mines covered by this mortgage were subject to flooding; that unless this flooding could be controlled, the mines would be totally destroyed; that if flooded, over two hundred miners would be thrown out of work; that the Coal Company was without available funds at that time to perform the necessary work to prevent the flooding of these mines; and that it was for this purpose and in order to continue operation, that the loan of $50,000 was made. It also appears from the testimony that at the time this loan was made and the mortgage was recorded, no tax lien or other encumbrance stood against the property and that the officers of the appellee, who were also officers of the Coal Company, were under the impression that a settlement of the tax liability of the Coal Company had been satisfactorily arranged.

On August 9, 1928, sometime after the money had been loaned and the mortgage recorded, the collector of internal revenue filed notice of the government's tax lien in

the District Court for the Eastern District of Pennsylvania and not for the Western District, in which the mines are situated. On January 22, 1931, approximately two and a half years later, the collector filed a like notice with the Prothonotary of Cambria County.

In 1935, the appellee started proceedings to foreclose its mortgage in the Court of Common Pleas of Cambria County. The United States was made a party defendant and upon its motion the proceedings were removed to the District Court. As stated above, the District Court held that the appellee's mortgage lien is entitled to priority over the government's tax lien and this appeal was thereupon taken.

The United States contends that its lien is entitled to priority over appellee's mortgage on the ground that, at the time the loan was negotiated and the mortgage executed, the appellee knew that the Coal Company owed the taxes in question.

Ever since the Act of July 13, 1866 (14 Stat. 107) the United States has been given a lien for unpaid taxes. Section 3186, Revised Statutes, 26 U.S.C.A. §§ 1560, 1561, 1562. As amended in 1879, and prior thereto, Section 3186 contained no provisions for the recording or filing of the lien, but merely provided as follows: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person." 20 Stat. 331, 26 U.S.C.A. § 1560 note.

On May 1, 1893, the United States Supreme Court, in the case of United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, held that the lien created by the above section was not subject to the recording laws of the states, and that it was enforceable even against a subsequent bona fide purchaser for value without notice. This decision cast a cloud of uncertainty upon titles to land throughout the United States and, before long, under the leadership of the American Bar Association, agitation for remedial legislation began. By the Act of March 4, 1913, Congress amended section 3186 by adding thereto a provision "that such lien shall not be valid as against any mortgagee, pur-

chaser, or judgment creditor until" certain recording and filing requirements, thereafter set forth, had been fulfilled. 37 Stat. 1016, 26 U.S.C.A. § 1560 note.

This section, with minor amendments, has ever since been retained on the statute books. The latest amendment, made by the Act of May 29, 1928, 45 Stat. 875, 26 U.S.C.A. § 1560 et seq., sets forth the provisions applicable to this case and the relevant requirements of recording and filing are as follows:

"Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(a) *Under State or Territorial laws.* In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or

"(b) *With clerk of district court.* In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice." 26 U.S.C.A. § 1562.

It is to be noted that the requirements of subsection (a) were not fulfilled until approximately two and one-half years after the assessment was made, which was long after the mortgage had been executed and recorded. Furthermore, the requirements of subsection (b) were never complied with for the only notice filed in the District Court was filed in the wrong district.

Notwithstanding its failure to comply with the requirements of the very act creating its lien, the United States contends its lien is entitled to priority in this case.

This contention can not be sustained. Whether a statute creating a lien is to be given a liberal or a strict construction, it is well established that "the character, operation and extent of the lien must be ascertained from the terms of the statute which creates and defines it, and the lien will extend only to persons or conditions provided for by statute, and then only where there has been at least a substantial compliance with all the statutory requirements." 37 C.J. 309, 322, 323; In re Brunquest, 4 Fed.Cas. p. 482, No. 2,055; The Suelco, D.C., 286 F. 286; Gile v. Atkins, 93 Me. 223, 44 A. 896, 74 Am.St.Rep.

341. Positive legislative enactments prescribing conditions essential to the existence and preservation of a statutory lien cannot be disregarded. Augustine v. Congregation of Holy Rosary of Pompeii, 213 Wis. 517, 252 N.W. 271. In the instant case, Section 3186, which provides for the creation of the government's tax lien, specifically provides that "such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed" as thereinafter set forth. The United States did not fulfill the requirements necessary for the preservation of its lien as against "any" mortgagee until two and one half years had elapsed, and then it was too late to affect the appellee's lien.

Nevertheless, the United States has urged this court to take into consideration the equitable doctrine of bona fide purchasers without notice, and to read into the act a limitation which is not there. In the case of Ferris v. Chic-Mint Gum Co., 14 Del.Ch. 232, 124 A. 577, the United States raised in the State of Delaware a similar contention with respect to this same statute. Chancellor Wolcott, in a well considered and able opinion, disposed of this contention as follows [page 579]: "Nothing has been adduced here which would justify the court in going over into the field of unrelated equitable doctrines to borrow an idea as justification for writing into the language of the act something by way of exception which the Congress itself saw fit to omit." That statement applies with equal force to the facts of the case at bar.

The United States also contends that Congress, in passing the act in question, actually intended to provide protection only to mortgagees, purchasers and judgment creditors without notice, and in support of this contention has cited, from the Congressional Record, the statements of a congressman made in 1913 when the act was first amended to provide for the filing of notice. We can not gather the intention of Congress from the statements of a single member thereof (United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007) but if we could, we would not be entitled to rewrite the statute to make it comply with his statements. That an act covers a somewhat broader field than Congress originally intended, does not confer upon the courts the power to read into that act restrictions and limitations which are not there.

It is a well established doctrine that a clear, unambiguous statute must be literally construed. Hamilton v. Rathbone, 175 U.S. 414, 20 S.Ct. 155, 44 L.Ed. 219; Thompson v. United States, 246 U.S. 547, 38 S.Ct. 349, 62 L.Ed. 876; Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156; Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361. If an apparently unambiguous statute contains hidden ambiguities, or if a literal construction would clearly defeat the object intended by Congress, or if a literal construction would result in absurdities so gross "as to shock the general moral sense", then the courts may be entitled to depart from the strict wording in order to give the statute a reasonable construction Helvering v. New York Trust Co., supra, Crooks v. Harrelson, supra.

In the instant case, however, the literal interpretation of section 3186 does not contain hidden ambiguities, does not defeat the object intended by Congress and does not result in any shocking absurdity. Indeed, any possible absurdity resulting from such an interpretation is far less shocking than the situation existing prior to 1913 when titles to land, which had always been governed by state law, were clouded by the provisions of a federal statute. It could hardly be called absurd to give priority to a lien based upon consideration which saved the property here involved from being a total loss, kept the government's tax lien from becoming entirely worthless, and made it possible for two hundred men to continue supporting their families.

The case of Heyward v. United States, 5 Cir., 2 F.2d 467, cited by the government in support of its contention that Section 3186 provides protection only for mortgagees, purchasers and judgment creditors without notice, is clearly distinguishable from the case at bar. In that case the members of a partnership incorporated their business and, with the exception of their bookkeeper, who was given 5% of the stock, became the sole stockholders of the new corporation. The corporation was rightly held liable for taxes assessed upon excess profits earned by the partnership. Its liability was not dependent upon the provisions of Section 3186 but upon general principles of corporation law. The corporation, under the circumstances of

**614**

that case, was nothing more than a "new coat" for the partnership business, and the simple expedient of incorporation did not cut off its liability for its legitimate obligations. 14 C.J. 305, 306, 307; Du Vivier & Co. v. Gallice, 2 Cir., 149 F. 118; York Mfg. Co. v. Brewster, 5 Cir., 174 F. 566; Hall v. Herter Bros., 90 Hun 280, 35 N. Y.S. 769; Andres v. Morgan, 62 Ohio St. 236, 56 N.E. 875, 78 Am.St.Rep. 712; Steinberger Petroleum Corp. v. Whitley, Tex.Civ.App., 105 S.W.2d 727; Kulka v. Nemirovsky, 321 Pa. 234, 182 A. 692.

The decree of the District Court is affirmed.