## HAGGAR CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 9009.

Circuit Court of Appeals, Fifth Circuit.

May 23, 1939.

Rehearing Denied June 17, 1939.

O. D. Brundidge, of Dallas, Tex., for petitioner.

Helen R. Carloss, Sewall Key, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., Jas. W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a decision of the Board of Tax Appeals sustaining a deficiency assessment against petitioner for excess-profits taxes for the year 1933. The question presented is whether a capital-stock tax return, filed pursuant to section 215 (f) of the National Industrial Recovery Act, 48 Stat. 208, may be amended within the time fixed for filing returns.

Section 215(a) of the act imposes a tax of $1 for each $1,000 of the adjusted declared value of the capital stock of each domestic corporation doing business during the year ending June 30, 1933, to be paid by the corporation. Clause (d) provides that every such corporation shall make a return within one month after June 30th, and that the commissioner, with the approval of the Secretary, may set up rules and regulations prescribing the form and content of the return, as well as for an extension of time, not to exceed sixty days, for making the return. Clause (f) provides that, for the first year, the adjusted declared value shall be the value as declared by the corporation in its first return, and further provides that such declaration of value may not be amended. By section 216(a), an excess-profits tax is imposed, the tax being equivalent to 5 per cent of such portion of the net income for the income-tax taxable year, as exceeds 12½ per cent of the adjusted declared value. 48 Stat. 195, 207, 208.

Treasury Regulation 64 (1933 Ed.), article 42, adopted the foregoing provisions of the act, and admonished that the declared value would not only be used as the basis for payment of the capital-stock tax for the first taxable year, but that it would also be a primary factor in the computation of the tax for later years, as well as for the computation of excess-profits taxes. Instructions were attached to the form adopted for making the return, in which it was stated that the corporation was required to declare a value for its entire capital stock, which declared value would not be subject to change, either by the commissioner or the corporation, but that, if the net income for the income-tax taxable year should be in excess of the 12½ per cent of such declared value, an excess-profits tax of 5 per cent of the excess was imposed by the act. The instructions further stated that, in arriving at the original declared value, the value of the business and property as an entirety and as a going concern should be considered, as well as the net worth of the corporate assets, including surplus and undivided profits, franchise, good will, outstanding contracts, earning capacity, and

the market value of the corporate shares. Following this recitation, it stated that the corporation should determine the original declared value according to its best judgment.

Petitioner filed its first return, declaring therein a value of $120,000 for its entire capital stock, and paid $120 as the tax due thereon. Thereafter, and within the extended time for filing its return, it filed another and different return declaring the value at $250,000, and paid $250 as the tax due thereon. Due to a slight difference in the corporate name given on the two returns, and to the absence of any reference in the latter to the former, the collector accepted both on the assumption that they were made for different corporations. The first return declared the value of the stock at its par or face value; the second declared it at what petitioner contends was its actual or real value. A claim for a refund of the $120 tax payment was denied, but a refund of the $250 payment was tendered to petitioner, and rejected.

On March 15, 1934, petitioner filed its income and excess-profits tax return for the calendar year 1933, in which it inadvertently computed its excess-profits tax exemption at 12½ per cent of $370,000. The deficiency determined by respondent is computed on the basis of a declared value of $120,000. That contended for by petitioner is $250,000. Respondent contends that the original declared value is that set out in the first return. Petitioner contends that its second return was intended as an amendment of the first and, being filed within the time allowed, should be the one considered.

The plan of taxation provided for in the act is a flat rate of taxation on the capital investment, and an additional tax on excess profits derived therefrom. Thus, if the taxable value of the capital investment be relatively high, the capital-stock tax is proportionately great. However, in such case, the probability of tax liability for profits is remote. If the taxable value placed upon the capital investment be relatively low, the capital-stock tax is correspondingly low, but the probability of the profits being taxable becomes large. The two taxes are made to work against each other, and the Government accepts the revenue from either source as being just. The declaration of a high value for the capital investment exposes the corporation to a tax liability when no profits are realized, while a low declaration of value produces a high potential liability if profits are realized. The basis of excess-profits taxes being an exemption of 12½ per cent of the declared value, the taxpayer is given a formula by which, to avoid both extremes and inequitable results, it may apply the information best known to it.

In the report of the Senate Finance Committee, Senator Harrison, Chairman, states that, in order "to avoid controversy as to the value of the capital stock, the tax is imposed upon the value declared by the corporation." In the same report it is stated that the primary object of the excess-profits tax is to induce corporations to declare a fair value for their corporate stock. Senate Report No. 114, 73 Congress, 1st Session, page 6.

If the language of section 215(f) is to be taken literally, there can be no doubt of the correctness of the interpretation placed thereon by respondent and the Board of Tax Appeals. That language is, "the adjusted declared value shall be the value, as declared by the corporation in its first return under this section." This language is immediately followed by the parenthetical provision, "which declaration of value cannot be amended." This language is clear and free from any ambiguity or shades of meaning which would call for the application of any rules of construction other than that it shall be given its plain meaning. If Congress had intended to allow an amendment to the declaration of value within the time for filing returns, it could have done so, and would not have specified the declaration in the first return as the basis for the computation of the tax. United States v. Hartwell, 6 Wall. 385, 396, 18 L.Ed. 830; Lake County v. Rollins, 130 U.S. 662, 670, 9 S.Ct. 651, 32 L.Ed. 1060; Hamilton v. Rathbone, 175 U.S. 414, 419, 20 S.Ct. 155, 44 L.Ed. 219; Thompson v. United States, 246 U.S. 547, 551, 38 S.Ct. 349, 62 L.Ed. 876; United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175.

The administrative interpretation of this and subsequent provisions in later revenue acts, incorporated in the Treasury regulations, followed by subsequent enactments in which the same language is used, leaves no doubt as to legislative intent. The declared legislative purpose being to

make the first return filed under the act the basis for the computation of the tax, and recognizing the possibility that amended returns might be attempted, the Congress expressly provided that the first declaration of value was not subject to amendment. The purpose to relieve the commissioner of any duty to determine the correct valuation, and requiring the corporation to fix its own value, would be defeated by any other view, since the filing of a succession of returns, with nothing more, would require a determination of which was correct. Moreover, any question as to, which return correctly declared the value would give rise to litigation of the very type that the Congress sought to prevent.

We are not unmindful of a contrary holding by the Sixth Circuit in the case of Glenn v. Oertel Co., 6 Cir., 97 F. 2d 495. In that case the opinion seems to take the view that the Congress was seeking to have the return declare the true or actual value of the capital assets of the corporation. Value is a relative term, and, when applied to the capital assets of a corporation, defies application of any set rule or formula for its determination. Since the assets include good will, franchises, value as a going concern, as well as physical properties with fluctuating values, a method of determination for one corporation may be unjust for another; and the value, once determined, is subject to change between the time of its determination and the filing date of the return. Thus, true or actual value is made irrelevant, and the corporation is given the privilege of making its own rules and applying its own formulas, not for the determination of actual or real value, but for a basis upon which both taxes are to be computed, and with the privilege of selecting the basis most favorable to it. To make the plan work, it is necessary to confine the determination of tax liability to one return, and only one. The selection of the first, an intermediate, or the last return is a matter within the legislative discretion. In the act under consideration, the first return was selected.

The Board of Tax Appeals having held that the declaration contained in the first return was the true basis for the computation of the tax, and that the deficiency assessed by respondent was correct, its decision is affirmed.